[L.A. No. 31562. Feb. 22, 1983.]

LEONARD A. NEWTON, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

## COUNSEL

Leonard A. Newton, in pro. per., for Petitioner.

Herbert M. Rosenthal and Truitt A. Richey, Jr., for Respondent.

## OPINION

**THE COURT.**\*—We review the recommendation of the State Bar Court that petitioner Leonard A. Newton be disciplined for wilful failure to communicate with clients and failure to perform services for which he was retained. The review department has recommended that we suspend Newton from the prac-

---

\*Before Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Broussard, J., Reynoso, J., and Regan, J.†

†Assigned by the Chairperson of the Judicial Council.

tice of law for five years, but stay execution, placing him on probation for that period. Recommended conditions of probation include one year of actual suspension and a requirement that Newton obtain psychiatric or psychological help within 45 days of our order. The review department has further recommended that Newton report quarterly to the State Bar that he is continuing to seek such help, unless the psychiatrist or psychologist determines that it is no longer needed. Resumption of practice after the one-year suspension is, however, not contingent on progress in the psychiatric treatment.

■ Although the allegations against Newton appear to be supported by the evidence, we conclude that the State Bar has proceeded incorrectly and order that it should initiate proceedings under Business and Professions Code section 6007, subdivision (b), to determine whether Newton, because of mental illness or infirmity, is "unable or habitually fails to perform his duties or undertakings competently" or is "unable to practice law without danger to the interests of his clients and the public."

I

Newton was admitted on December 22, 1974, and practiced initially with another attorney in Van Nuys. He later moved to Santa Maria and started his own practice.

On August 25, 1978, the State Bar investigation committee issued a notice to show cause citing 10 counts of allegedly wilful failure to contact clients and perform services. Hearings were held on March 27, 1979, May 5, 1979, May 25, 1979, and May 26, 1979, before a three-member panel. The panel dismissed four counts but found Newton culpable on the remaining six. The panel's findings of fact pertaining to those six counts are not directly relevant to our determination and have therefore been omitted.

On January 10, 1980, the review department abated this proceeding and recommended that the department of trial counsel investigate Newton's mental state pursuant to Business and Professions Code section 6007, subdivision (b).[1] A referee of the State Bar Court investigation department conducted an inquiry

[1]Section 6007, subdivision (b) provides in relevant part: "[T]he board of governors shall enroll a member of the State Bar as an inactive member if, after notice and opportunity to be heard before the board or a committee, the board finds that the member, because of mental infirmity or illness, or because of addiction to intoxicants or drugs, is (1) unable or habitually fails to perform his duties or undertakings competently, or is (2) unable to practice law without danger to the interests of his clients and the public. No proceeding pursuant to this subdivision shall be instituted unless the board or a committee finds, after preliminary investigation, or during the course of a disciplinary proceeding, that probable cause exists therefor. [¶] In the case of an enrollment pursuant to this subdivision (b) the board of governors shall terminate the enrollment upon proof that the facts found as to the member's disability no longer exist; and, on payment of all fees required."

at a preliminary hearing on March 11, 1981. Newton indicated that he would not voluntarily submit to a psychiatric examination at that stage, but would comply with any order to show cause issued under section 6007, subdivision (b). The hearing examiner, concluding that there was insufficient cause to institute section 6007, subdivision (b) proceedings, explained: "As to whether [Newton] has a mental infirmity or illness which would prevent him from practicing law, I frankly do not know. It is my impression from my time with him that he believes that he was persecuted by the community in Santa Barbara and whatever caused that state of mind to exist in 1977 may or may not be present at the current moment . . . . It just seems to me that in order to measure up to the standard in 6007(b), you need a great deal more facts than were present in my proceeding with him." The examiner recommended that the bar proceed with the instant disciplinary action and abandon its attempt to place Newton on inactive status under the provisions of section 6007, subdivision (b).

On October 22, 1981, the abatement was terminated.[2] Review department proceedings followed on November 12, 1981. The department adopted the hearing panel's findings of fact but added that "[f]rom the nature of Respondent's pleadings and from his presentation to the Review Department, it appears . . . that Respondent is in need of psychological or psychiatric help." The sanctions proposed by the department and those proposed by the hearing panel were identical.

## II

Section 6007, subdivision (b) states, in relevant part, that proceedings to determine whether, "because of mental infirmity or illness," a member is "(1) unable or habitually fails to perform his duties or undertakings competently, or is (2) unable to practice law without danger to the interests of his clients and the public" may not be instituted unless "the board or a committee finds, after preliminary investigation, *or during the course of a disciplinary proceeding,* that probable cause exists therefor." (Bus. & Prof. Code, § 6007, subd. (b), italics added.) This language suggests that examination of the transcript of disciplinary proceedings is appropriate when determining whether sufficient cause exists to institute section 6007 proceedings. Apparently, the hearing examiner assigned to make a preliminary determination of whether probable cause existed here failed to examine the record before us, and based his conclusion solely upon a one-hour interview.

As the State Bar review department obviously recognized when it stayed this action pending a preliminary hearing to determine whether section 6007, sub-

---

[2]The record does not reveal why the abortive subdivision (b) proceedings consumed 22 months.

division (b) proceedings were appropriate, the record here raises serious questions regarding Newton's mental condition. The review department's determination is amply confirmed by the nature of petitioner's written submissions and oral argument in this court.[3]

We therefore conclude that the State Bar was on the right track when it stayed this proceeding and explored the section 6007 route. Its only mistake lay in prematurely abandoning it. Therefore, on our own finding of probable cause, the State Bar is hereby ordered to reinstitute proceedings under that section.

Section 6007, subdivision (c) states: "The pendency or determination of a proceeding or investigation provided for by this section shall not abate or terminate a disciplinary investigation or proceeding except as required by the facts and law in a particular case." Applying the dictates of this section, we hereby abate the instant disciplinary proceeding. Its eventual fate—whether it is to be resumed or terminated—depends, of course, on the findings which result from the proceedings to be conducted pursuant to section 6007, subdivision (b).

**BIRD, C. J.,** Concurring and Dissenting.—I agree with the majority that this matter should be returned to the State Bar for further proceedings. However, I would return the matter as a disciplinary proceeding and order that it be consolidated with In re Leonard A. Newton (case No. 790129, SB 37).

---

[3]At this point, the extent to which petitioner's current problems contributed to the conduct for which the State Bar is attempting to discipline him is, of course, entirely conjectural.